ROBERT A. JOSHUA,

       Petitioner,

   v.

UNITED STATES OF AMERICA,

       Respondent.

Case No. 20-cv-1156-pp

**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

On July 27, 2020, the petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255, challenging his conviction in United States v. Joshua, Case No. 16-cr-27-pp (E.D. Wis.). Dkt. No. 1. The petitioner asserts that his sentence violates the United States Supreme Court's decision in United States v. Davis, ___ U.S. ___, 139 S. Ct. 2319 (2019). Id. at 1. The petitioner plainly is not entitled to relief. This order denies the §2255 motion and dismisses the case.

**I.    Background**

    A.    <u>Underlying Case</u>

        1.    *Indictment*

On February 17, 2016, the grand jury returned an indictment against the petitioner. Joshua, Case No. 16-cr-27, Dkt. No. 1. Count One charged the

1

petitioner with the September 29, 2015 armed robbery of WaterStone Bank in violation of 18 U.S.C. §§2113(a) and (d). Id. at 1. Count Two charged the petitioner with unlawfully and knowingly using, carrying and brandishing a firearm during and in relation to the crime of violence charged in Count One, in violation of 18 U.S.C. §924(c)(1)(A)(ii). Id. at 2. Count Three charged the petitioner with possessing a firearm as a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Id. at 3.

    2.  *Information*

On May 18, 2016, the United States Attorney issued a two-count information. Dkt. No. 15. Count One charged the petitioner in a September 27, 2015 Hobbs Act robbery of a Little Caesars Pizza Restaurant at 9230 West Capitol Drive in Milwaukee. Id. at 1. Count Two charged him with the September 21, 2015 armed robbery of All Credit Lenders—again, a Hobbs Act robbery. Id. at 2.

    3.  *Plea agreement*

On May 12, 2016, the petitioner (represented by Attorney Daniel Stiller) signed a plea agreement. Dkt. No. 16 at 15. The plea agreement was filed on May 18, 2016. Dkt. No. 16. The plea agreement provided that the petitioner was pleading to Counts One and Two of the indictment and Counts One and Two of the information (one count of bank robbery, one §924(c) count and two counts of Hobbs Act robbery). Id. at ¶¶5-6. It reflected that the petitioner had read and fully understood the charges in both the indictment and the information and "the nature and elements of the crimes with which he ha[d]

2

been charged," and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶3. The petitioner acknowledged, understood and agreed that he was guilty of the offenses in Counts One and Two of the indictment and Counts One and Two of the information. Id. at ¶7. He admitted that facts attached to the plea agreement were true, correct and established his guilt beyond a reasonable doubt. Id. The petitioner understood and agreed that (1) the maximum term of imprisonment for the offense in Count One of the indictment was twenty-five years in prison, five years of supervised release and a $250,000 fine; (2) Count Two of the indictment carried a "[m]andatory minimum of seven years and up to life in prison" consecutive to any other sentence, a maximum of five years of supervised release and a $250,000 fine; and (3) Counts One and Two of the information each carried a maximum of twenty years in prison, three years of supervised release and a $250,000 fine. Id. at ¶8. The petitioner acknowledged, understood and agreed that he "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶9.

      The agreement also laid out the elements of the charges. Id. at ¶¶11-13. It said that the parties understood and agreed that in order to sustain the armed bank robbery charge in Count One of the indictment, the government must prove beyond a reasonable doubt that (1) the petitioner "took from the person or presence of another, money belonging to or in the care, custody, control, management or possession of WaterStone Bank," (2) "at the time charged in the indictment the bank had its deposits insured by the Federal

Deposit Insurance Corporation," (3) the petitioner "took such money by means of force and violence, or by means of intimidation," and (4) the petitioner "put in jeopardy the life of the teller by the use of a dangerous weapon." Id. at ¶11.

The parties confirmed they understood and agreed that in order sustain the charge of brandishing a firearm during a crime of violence in Count Two of the indictment, the government must prove that (1) the petitioner committed the armed bank robbery alleged in Count One of the indictment, and (2) the petitioner "knowingly brandished a firearm during that crime." Id. at ¶12. And the parties understood and agreed that in order to sustain the Hobbs Act robberies charged in Counts One and Two of the information, the government must prove that (1) the petitioner "knowingly obtained money or property from or in the presence of a person," (2) the petitioner "did so by means of robbery," (3) the petitioner "believed that the person parted with the money or property because of the robbery," and (4) the robbery affected interstate commerce. Id. at ¶13.

The petitioner acknowledged and understood "that his attorney . . . discussed the applicable sentencing guidelines provisions with [him] to [his] satisfaction." Id. at ¶16. He acknowledged and understood "that the sentencing guidelines recommendations contained in [the] agreement [did] not create any right to be sentenced within any particular sentence range, and that the court [might] impose a sentence above or below the guideline range." Id. at ¶18. The parties acknowledged, understood and agreed that the sentencing court could "consider relevant conduct in calculating the sentencing guidelines range, even

4

if the relevant conduct [was] not the subject of the offense to which [the petitioner] [was] pleading guilty." Id. at ¶19. "The parties agree[d] to recommend to the sentencing court that the applicable base offense level for the offenses charged in Count One of the Indictment and in Counts One and Two of the Information [was] 20." Id. at ¶20. The parties also agreed to recommend several adjustments to the base offense level; they agreed to recommend that (1) a two-level increase for taking property belonging to a financial institution applied to the offense level for the offense charged in Count One of the indictment, id. at ¶21; (2) a five-level increase applied "to the offense level for the offense charged in Counts One and Two of the Information because the offenses involved the use of a firearm," id. at ¶22; (3) a two-level increase for the petitioner's vehicular flight from law enforcement applied to "the offense level for the offense charged in Count One of the Indictment," id. at ¶23; and (4) "a three-level increase for the multiple counts involved," id. at ¶24. The government agreed to recommend a two-level decrease for the petitioner's acceptance of responsibility, and an additional one-level decrease for timeliness. Id. at ¶21.

"The government agree[d] to recommend a total sentence of no more than 13 years in prison," while "[the petitioner] agree[d] to recommend a total sentence of no less than 10 years in prison." Id. at ¶28. The parties acknowledged, understood and agreed that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to

the maximum penalties" set forth in the agreement. Id. at ¶29. The petitioner acknowledged, understood and agreed that he could move to withdraw his guilty plea "solely as a result of the sentence imposed by the court." Id. at ¶30.

The agreement included the petitioner's waiver of rights. The petitioner "knowingly and voluntarily waive[d] his right to appeal his sentence in this case and further waive[d] his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. §2255." Id. at ¶39. "This waiver [did] not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum; (2) the sentencing court's reliance on any constitutionally impermissible factor; and (3) ineffective assistance of counsel." Id.

The plea agreement provided that if the petitioner "violate[d] any term of [the] agreement at any time, engage[d] in any further criminal activity prior to sentencing, or fail[ed] to appear for sentencing, [the] agreement [would] become null and void at the discretion of the government." Id. at ¶45. If the agreement "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. Finally, the petitioner acknowledged, understood and agreed that he was "plead[ing] guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶46.

6

4.  *Change-of-plea hearing*

On May 23, 2016, the court held a change-of-plea hearing. Dkt. No. 18. The petitioner appeared in person with Attorney Stiller. Id. at 1. The court's minutes reflect that during the hour-long hearing, the court placed the petitioner under oath, reviewed the plea agreement with him and questioned him. Id. The court recounted that (1) "the charge in Count One of the indictment carried a maximum prison term of twenty-five years and a maximum fine of $250,000" and a minimum of five years of supervised release, (2) "Count Two of the indictment carried a mandatory minimum prison term of seven years and a maximum of life in prison" consecutive to any other sentence, (3) "Counts One and Two of the information each carried a maximum prison term of twenty years, a $250,000 fine, up to three years of supervised release, and (4) each count carried a $100 special assessment. Id. "[T]he court found that [the petitioner] understood his trial rights, the penalties associated with the charges, the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id. "[T]he court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. at 1-2. The court accepted the petitioner's plea and found him guilty of the offenses in the indictment and information. Id. at 2.

5.  *Sentencing hearing*

On September 6, 2016, the court conducted the sentencing hearing. Dkt. No. 28. The petitioner appeared in person with Attorney Stiller, who confirmed that he and the petitioner had reviewed the revised presentence investigation

7

report and the addendum. Id. at 1. Addressing the Sentencing Guidelines calculations, the court found that the presentence investigation report provided a base offense level of twenty for the armed bank robbery alleged in Count One. Id. It noted a two-level increase "because property of a financial institution was taken," and a further two-level increase for the petitioner's flight, resulting in an adjusted offense level of twenty-four. Id. Neither party objected. Id. With regard to Count Two, the presentence investigation report indicated a mandatory minimum sentence of seven years, a maximum of life in prison and the requirement that the sentence run consecutively to any other guidelines sentence; again, neither party objected. Id.

Turning to Count One of the information, the court explained that the presentence investigation report reflected a base offense level of twenty, a six-level increase for "otherwise using" a firearm, a two-level increase for restraint of a victim, for a total offense level of twenty-eight. Id. at 2. While neither party objected to the base offense level calculation, Attorney Stiller objected to the presentence investigation report's six-level increase for "otherwise using" firearm. Id. He argued that the report premised the increase "on a theory that pointing a firearm at someone elevated the action from 'brandishing' to 'otherwise using' the firearm." Id. The government maintained its recommendation from the plea agreement of a five-level increase for brandishing. Id. "The court agreed with the defense that pointing the gun at someone did not cross the line from brandishing to otherwise using," sustained the petitioner's objection to the six-level increase and applied a five-level

8

enhancement for brandishing a firearm. Id. The parties also objected to the two-level enhancement for restraint of a victim. Id. The court agreed that the facts did not support the enhancement and sustained the objection. Id. at 2-3. "The court thus adopted the guideline calculations in the plea agreement, which resulted in an offense level of 25 for the bank robbery charge." Id. at 3. Neither party objected to the total offense level of twenty-five for Counts One and Two of the information. Id. "Thus, the highest offense level was 25, plus three additional levels for multiple counts, which brought the total offense level to 28." Id.

After the court subtracted three levels for the petitioner's acceptance of responsibility, it arrived at an adjusted offense level of twenty-five. Id. Neither party objected. Id. The report reflected six criminal history points, resulting in a criminal history category of III; the court calculated that an adjusted offense level of 25 in criminal history category III resulted in an advisory sentencing guideline range of seventy to eighty-seven months before adding the mandatory minimum sentence of seven years for the §924(c) count charged in Count Two of the indictment. Id. (Adding the mandatory minimum seven-year sentence resulted in a guideline range of 154 to 171 months, with a floor of eighty-four months. Id. at 4.) Again, neither party objected, and each gave sentencing recommendations comporting with the plea agreement: the government recommended thirteen years of imprisonment while the petitioner proposed twelve years. Id. at 3-4. The court concluded that a sentence of one hundred sixty-four months, or thirteen and a half years, was sufficient but not more

9

than necessary to take into account the §3553 factors. The court also imposed $400 in special assessments and ordered $4,616.74 in restitution. Id. at 5. The petitioner did not object. Id. The government moved for—and the court orally granted—dismissal of Count Three of the indictment. Id. at 6.

The court entered judgment on September 14, 2016. Dkt. No. 29. The court's judgment reflected the sentence: eighty months on Count One of the indictment (the bank robbery count), eighty months on each of Counts One and Two of the information (the Hobbs Act robbery counts) and eighty-four months on Count Two of the indictment (the §924(c) count) to run consecutively to the other sentences, for a total sentence of one hundred sixty-four months. Id. The petitioner did not appeal.

  B. Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Dkt. No. 1)

Almost four years later, the court received from the petitioner this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Joshua v. United States, Case No. 20-cv-1156 (E.D. Wis.), Dkt. No. 1. The petitioner argues that Davis entitles him to relief, asserting that it struck down 18 U.S.C. §924(c)(3)(B) as unconstitutionally vague. Id. at 1.

**II. Analysis**

  A. Standard

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to

notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

B.  United States v. Davis

The petitioner says that his §924(c) conviction is unconstitutional after the United States Supreme Court's decision in Davis. Dkt. No. 1 at 5.

1.  *Timeliness*

28 U.S.C. §2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

11

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The petitioner filed his §2255 motion on July 27, 2020. Dkt. No. 1. The court entered judgment in his underlying criminal case on September 14, 2016. The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1). Section 2255(f)(3) tolls the limitations period from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The United States Supreme Court decided Davis, 139 S. Ct. 2319, on June 24, 2019. At least one district court in the Seventh Circuit has concluded that Davis recognized a new right that applies retroactively on collateral review, Carter v. United States, No. 16-cv-02184, 2019 WL 4126074, at *5 (C.D. Ill. Aug. 29, 2019), as has the Eleventh Circuit Court of Appeals, In re Hammoud, 931 F.3d 1032, 1037-39 (11th Cir. 2019). The court will assume—for the purposes of this decision only—that Davis did recognize a new right and that it applies retroactively on collateral review. The petitioner filed his §2255 motion thirteen months after the Supreme Court decided Davis. That means that the petitioner has not timely raised his claim, because he raised it more than a year from the date the Supreme Court decided Davis. The petitioner further asserts, however, that an impediment prevented him from filing his §2255 motion. Dkt. No. 1 at 2. The petitioner contends that the COVID-19 pandemic

12

and resulting quarantine "since February 2, 2020" interrupted his access to the prison library. Id. at 4. Assuming without deciding that a restriction to the prison library that prison officials imposed in February of 2020 tolled the limitations period under §2255(f)(2), the petitioner's motion would be timely.

       2.    *Procedural Default*

While a claim must be timely, it must also be cognizable. For a claim to be cognizable under §2255, the petitioner must have raised the claim on direct appeal; "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) (citing Hale v. United States, 710 F.3d 711, 713-14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." Delatorre, 847 F.3d at 843 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

If the petitioner raised the claim on direct appeal, the "law of the case" doctrine dictates that a Circuit Court of Appeals' decision becomes binding when that defendant later raises the same claim through a §2255 motion to vacate, set aside or correct a sentence. Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (citing United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986)).

The petitioner argues that his sentence and conviction violate Davis. Dkt. No. 1 at 12. Id. The petitioner raises this claim for the first time in the §2255 motion.

> A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir.2009). Likewise, a § 2255 appellant cannot raise for the first time on appeal a claim not presented to the district court in the § 2255 proceedings below. *Pierce v. United States*, 976 F.2d 369, 371 (7th Cir.1992). A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir.2013); *Gant v. United States*, 627 F.3d 677, 683 (7th Cir.2010). Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir.2008).

McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).

Normally, the doctrine of procedural default would bar this claim because the petitioner did not raise it before this court or the Seventh Circuit. But the petitioner may overcome procedural default if he can show that he had cause for his failure to raise the issue earlier and actual prejudice. Cross v. United States, 892 F.3d 288, 294 (7th Cir. 2018) (citing Bousley, 523 U.S. at 622). The petitioner can show cause for his failure to raise the Davis argument before the trial court. "A change in the law may constitute cause for procedural default if it creates 'a claim that is "so novel that its legal basis is not reasonably available to [trial or appellate] counsel."'" Id. (citing Bousley, 523 U.S. at 622). The Supreme Court decided Davis on June 24, 2019—three years after the court accepted the petitioner's guilty plea and thirty-three months

after the court imposed sentence. The Davis decision was not reasonably available to the petitioner prior to sentencing; he has stated cause for his default.

But the petitioner cannot show prejudice. Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crime.'" Davis, 139 S. Ct. at 2324. The statute defines a "crime of violence" in "two subparts—the first known as the elements clause, and the second [known as] the residual clause." Id. Section 924(c)(3)(A) is the "elements" clause; it defines a "crime of violence" as "an offense that is a felony" and "has as an element the use, or threatened use of physical force against the person or property of another." Section 924(c)(3)(B) is the "residual" clause, and defines a "crime of violence" as "an offense that is a felony" and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In Davis the Supreme Court held that the "residual" clause—§924(c)(3)(B)—was unconstitutionally vague, because it required a judge to imagine the "ordinary" circumstances of whatever the underlying crime may have been and then "guess" whether that crime would, "by its nature," involve a substantial risk that physical force against the person or property of another might be used in the course of committing it. See Davis, 139 S. Ct. at 2325-26. The petitioner argues that "Congress intended the provisions of §924(c)(3) to

15

operate together, and by their interrelations, every charged underlying offense attached to §924(c)'s penalty was subject to the entirety of 18 U.S.C. §924(c)(3)." Dkt. No. 1 at 15. He says that post-Davis, "the analysis has been ripped apart and is now other than what Congress intended to define a crime of violence, further use of the analysis in the current §924(c)(3) setting violates the separation of powers doctrine." Id. at 15-16. The petitioner appears to argue that §924(c)(3)(A) and (c)(3)(B) cannot be severed, and therefore, both are invalid post-Davis.

The petitioner does not provide, and the court is not aware of, any controlling or persuasive authority holding that the elements clause of §924(c)(3)(A) cannot stand after Davis invalidated the residual clause of §924(c)(3)(B). Davis itself announced no such requirement. And as recently as this year, the Supreme Court acknowledged the continuing viability of §924(c)(3)(A) in United States v. Taylor, ___ U.S. ___, 142 S. Ct. 2015 (2022) (finding that Hobbs Act robbery does not constitute a "crime of violence" under §924(c)(3)(A)). And last year, the Seventh Circuit reiterated that it and its sister courts "have consistently held that *Davis*'s invalidation of the residual clause of § 924(c) did not affect the constitutionality of the elements clause." United States v. Hammond, 996 F.3d 374, 397 (7th Cir. 2021) (citations omitted).

The petitioner relies on United States v. Booker, 543 U.S. 220 (2005). Dkt. No. 1 at 16. Booker stands for the proposition that congressional intent is relevant to a severability determination. Booker, 543 U.S. at 224. The petitioner does not provide any evidence that Congress intended §§924(c)(3)(A) and

(c)(3)(B) to be inseverable. Further, an unconstitutional provision of a statute is presumptively severable. See Barr v. Am. Assoc. of Political Consultants, Inc., __ U.S. __, 140 S. Ct. 2335, 2350 (2020) (citing Free Enterprise Fund v. Public Company Accounting Oversight Bd., 561 U.S. 477, 508 (2010)). Section 924(c)(3)(A) remains the law in the Seventh Circuit; if armed bank robbery is a crime of violence under §924(c)(3)(A), Davis does not provide the petitioner relief.

In addition to Counts One and Two of the information (the Hobbs Act counts), the petitioner pled guilty to Counts One and Two of the indictment. Count One of the indictment charged the petitioner with armed bank robbery in violation of 18 U.S.C. §§2113(a) and (d), and Count Two of the indictment charged him with knowingly using, carrying and brandishing a firearm in connection with the armed bank robbery underlying Count One. Since the Supreme Court decided Davis, the Seventh Circuit Court of Appeals has confirmed that a bank robbery in violation of §2113(a)—of which the defendant was convicted—is a crime of violence under §924(c)(3)A). See Reyes v. United States, 998 F.3d 753, 758 (7th Cir. May 24, 2021) (citing United States v. Williams, 864 F.3d 826, 829-30 (7th Cir. 2017) ("Reyes now concedes on appeal that bank robbery committed in violation of § 2113(a) is a crime of violence under § 924(c) even after *Davis* because bank robbery meets the elements clause in the statutory definition.") See 18 U.S.C. §2113(a) ("Whoever, by force and violence, or by intimidation, takes . . . .").

Seventh Circuit decisions bind this court. The petitioner's conviction for armed bank robbery is a crime of violence under the elements clause, Section 924(c)(3)(A). Davis does not entitle the petitioner to relief.

3. *Waiver*

Even if the petitioner timely had filed his §2255 motion and had avoided procedural default, and even if he had not pled guilty to a crime of violence under the elements clause of §924(c), the petitioner's express waivers of appellate and §2255 relief rights in his plea agreement bar relief. The Seventh Circuit has held that a waiver of §2255 relief in a plea agreement is enforceable, and that a court should treat it no differently than the waiver of a direct appeal. See Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999); see also United States v. Perillo, 897 F.3d 878, 882 (7th Cir. 2018) ("A 'voluntary and knowing waiver of an appeal is valid and must be enforced.'") (quoting United States v. Sakellarion, 649 F.3d 634, 638 (7th Cir. 2011)). "An appeal waiver does not prevent challenges to a sentence based on a constitutionally impermissible factor such as race, a sentence that exceeds the statutory maximum for the particular crime, a proceeding lacking a 'minimum of civilized procedure,' or ineffective assistance of counsel in negotiating the plea agreements." United States v. Campbell, 813 F.3d 1016, 1018 (7th Cir. 2016). A petitioner who waives his right to appeal may argue that he did not knowingly and voluntarily enter into the agreement. Jones, 167 F.3d at 1145. Representations made to a court during a plea colloquy are presumptively true.

Hurlow v. United States, 726 F.3d 958, 968 (7th Cir. 2013) (quoting United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008)).

The plea agreement and the plea colloquy demonstrate that the petitioner acknowledged that he was guilty of both the armed bank robbery and knowingly using, carrying and brandishing a firearm during that robbery. Because the court presided over both the change-of-plea hearing and the sentencing hearing, the court is satisfied that the petitioner entered into the agreement voluntarily, knowingly and intelligently. The petitioner now claims that his sentence violates Davis. That is neither a correct statement of the law nor a basis for relief given his admissions in the plea agreement and at the plea colloquy and his waiver of his appellate rights. The petitioner's express plea waiver bars this claim, even though the waiver predated Davis. Oliver v. United States, 951 F.3d 841, 845-46 (7th Cir. 2020). The court will deny the §2255 motion.

### III.  Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the §2255 motion should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petitioner's motion to vacate, set aside or correct his sentence plainly does not entitle him to relief under 28 U.S.C. §2255(a).

## IV. Conclusion

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of October, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**